IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Althea W. Jackson,                                ) | |
|                                 ) | C/A No.: 9:07-1083-MBS |
|         Plaintiff,     ) | |
|                                 ) | |
| vs.                                                    ) | |
|                                 ) | |
| Michael J. Astrue, Commissioner of   ) | **O R D E R** |
| Social Security,                             ) | |
|                                 ) | |
|        Defendant.  ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").

## I. PROCEDURAL HISTORY

Plaintiff Althea Jackson alleges that she has been disabled since December 9, 2003, because of foot, ankle, hip, and back pain from multiple sources including: tarsal tunnel syndrome, mononeuritis - lower limb, heel spur, plantar fasciitis, chronic tenosynovitis with instability of gait, hip pain, lower back pain with radiculopathy, and hypertension. (Tr. 118, 143, 158). She filed an application for disability insurance benefits ("DIB") on June 14, 2004, which was denied initially and upon reconsideration. (Tr. 15). Plaintiff requested a hearing before and an administrative law judge. The hearing was held before Administrative Law Judge Albert A. Reed (the "ALJ"), on April 18, 2006. Plaintiff was present, and although informed of the right to representation, she chose to appear and testify without the assistance of an attorney. Rebecca Bruce, M.A., a vocational expert, was present at the hearing and testified. Marcella Williams, the Plaintiff's cousin, also was present

and testified at the hearing. (Tr. 214-41).

After the administrative hearing, the ALJ determined that (1) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work;[1] (2) her past relevant work was precluded by her RFC; (3) there were a significant number of other jobs in the national economy that she could perform; and (4) she was not under a "disability" as defined by the Act at any time through the date of his decision. (Tr. 18-20). On September 26, 2006, Plaintiff requested review of the ALJ's decision (Tr. 11). The decision of the ALJ became the "final decision" of the Commissioner on April 11, 2007, after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. (Tr. 5-8). Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge George C. Kosko for a Report and Recommendation. On August 4, 2008, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's decision to deny benefits be reversed and remanded to the Commissioner for a new hearing and proper RFC assessment. The Commissioner filed objections to the Report and Recommendation on August 19, 2008. Plaintiff has not filed a response to the Commissioner's objections.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a *de novo* determination of any portions of the

---

[1] A sedentary job is defined as one which involves sitting. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567 (2007).

Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the

3

record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as: "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least twelve continuous months."

The Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination. The five questions are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant has or equals an impairment listed in the appropriate appendix; (4) whether the claimant is prevented by the impairment or combination of impairments suffered from engaging in their relevant past employment; and (5) whether the claimant has the ability to engage in other gainful activity considering their age, education, past relevant experience, and residual functional capacity. *See* 20 C.F.R. § 404.1520 (2007).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments, or capable of returning to former work. In such a case, no further inquiry is necessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and

that such work exists in the national economy. *Harper v. Bowen*, 854 F.2d 678 (4th Cir. 1988); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. [2] *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

## IV. FACTS

The facts are set out in detail in the Report and Recommendation. Plaintiff was born on November 6, 1965. She has a high school education for which she received a diploma. Plaintiff worked as an assembler making window sashes, as a packer of automotive belts, as a sales clerk in the J.C. Penney department store, and as a tagger in a clothing manufacturing plant. (Tr. 60). Plaintiff has a history of heel spurs and foot surgery dating back to 1990. (Tr. 225). On April 24, 2003, Plaintiff went to Dr. Mackie J. Walker, DPM, of Carolina Podiatric Medical Associates in Aiken, with complaints of left foot pain. (Tr. 109).

Dr. Walker diagnosed Plaintiff with plantar fasciitis and prescribed ice massages and stretching exercises. (Tr. 109). Over the next several weeks, Dr. Walker took performed a sonogram and took x-rays of Plaintiff's left heel. The doctor instructed her to continue therapy for three more weeks. (Tr. 108). Plaintiff had minimal improvement in her condition over the three week period. (Tr. 108).

On visits to Dr. Walker in September, October, and November 2003, Plaintiff continued to report minimal relief and improvement. (Tr. 105). Since her condition was not improving, Plaintiff

---

[2] There is no issue in this case as to the existence of alternative work in the national economy.

underwent surgery on December 11, 2003. (Tr. 104). On a follow-up visit from surgery, Plaintiff stated her heel was improving but the pain was persisting. (Tr. 103). After two months with no improvement in pain, Plaintiff and Dr. Walker discussed another surgical technique called endoscopic plantar fasciotomy. (Tr. 103). Plaintiff under went this second surgery on March 23, 2004. (Tr. 102). Her post-surgery diagnosis was heel spur/plantar fasciitis left and right foot. (Tr. 102). In months after the second surgery, Plaintiff returned to Dr. Walker and reported increased pain and continued burning and numbness in her right medial arch and heel. (Tr. 101).

Plaintiff underwent another surgery on March 23, 2004. (Tr. 102). On visits to Dr. Walker in May and June 2004, Plaintiff continued to complain of pain and Dr. Walker conducted additional testing. (Tr. 98-100). He noted that Plaintiff's plantar fasciitis pain had resolved, but her tarsal tunnel symptoms persisted. (Tr. 161). He wrote that Plaintiff remained unable to function because of tarsal tunnel symptoms. He completed a handicap parking form for her, and noted that Plaintiff was to remain off work. He advised her to consult with her employer regarding ongoing disability on August 5, 2004. (Tr. 161).

On March 8, 2005, Plaintiff underwent tarsal tunnel decompression on her left foot. She still, however, complained of numbness, and shooting pain in her left leg. To aid her recovery, Dr. Walker scheduled Plaintiff to attend physical therapy sessions three times a week for three weeks. The record reflects that Plaintiff felt better, but continued to have some pain and swelling in her left foot. (Tr. 147-57). She related minimal change and improvement, but at this point was still unable to wear shoes for more than two or three hours without pain. (Tr. 144-46).

On her September 8, 2005, visit with Dr. Walker, Plaintiff complained of continued pain in her foot and ankle and that pain was radiating from her lower back. At that time, she was referred

to a chiropractor, Dr. Kyles, for a consultation with respect to her back. Plaintiff was treated for severe low back, hip, and buttock pain at Kyles' Chiropractic Clinic in Aiken, South Carolina from September 13, 2005 - December 7, 2005. (Tr. 171-81). On October 7, 2005, Plaintiff returned to Dr. Walker and notified him that Dr. Kyles had diagnosed her with a hip displacement and that she was continuing to have pain in her left leg.

Plaintiff continued to see Dr. Kyles between September and December 2005 for dislocation of her hip. (Tr. 171-80). The record reflects some improvement in Plaintiff's complaints, but also notes that her improvement was hampered by persistent pain. (Tr. 171-80). On March 13, 2006, Dr. Walker referred Plaintiff to Dr. Enlund for acupuncture. (Tr. 134-35). Dr. Walker re-evaluated Plaintiff on March 20, 2006, and advised her to continue with acupuncture and activity restrictions. (Tr. 132-33).

On March 29, 2006, Dr. Walker wrote a "To Whom It May Concern" letter that stated: "[Plaintiff] is unable to bear weight in excess of 30 minutes on her left foot and cannot walk more than one city block without pain. As a result of this condition, [Plaintiff] has put on weight, which has aggravated her condition." (Tr. 131). All of this evidence was presented to the ALJ. In addition to Dr. Walker's assessment of Plaintiff's condition, Richard Weymouth, M.D., reviewed Plaintiff's records at the request of the Commissioner and completed a RFC assessment form on January 27, 2005. (Tr. 122-27). Dr. Weymouth determined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday.

## V. DISCUSSION

A.   The ALJ's Duty to Explore the Facts

The Commissioner first contends that the Magistrate Judge erred in concluding that the ALJ failed to discharge his duty to ensure that the facts of the case were adequately explored given Plaintiff's pro se status. The court agrees.

The Magistrate Judge made three specific findings that the ALJ's exploration of the facts were inadequate because: (1) the ALJ failed to inquire as to whether Plaintiff suffered side effects from her medications; (2) the ALJ failed to inquire into Plaintiff's daily level of pain from the swelling she reported in her left foot after her final surgery, and whether pain effects her daily activities; (3) the ALJ's written decision reported that Plaintiff had undergone three surgeries on her feet, but Plaintiff testified she had undergone five surgeries.

The Magistrate Judge correctly noted that when a claimant proceeds pro se, the ALJ has a heightened duty to assist that plaintiff develop the record so as to prevent prejudice. *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003). In assisting claimants, the ALJ is permitted to develop the record in several ways, including questioning witnesses, requesting evidence, and subpoenaing witnesses. 20 C.F.R. §§ 404.944, 404.950(d). In this case, however, there are no gaps in Plaintiff's medical records that the ALJ left unexplored that would be considered prejudicial given limitations on the court's scope of review. *See id.* at 275-76 (finding inadequate discharge of duty to develop record where ALJ found no disability in opposition to recommendation of treating physical and failed to obtain substantial amount of relevant medical records). First, while the record does reflect that Plaintiff took numerous medications over the course of her treatment, she did not

8

testify, at the administrative hearing, that her medication caused any adverse side-effects and there is no indication that she ever complained to Dr. Walker about side effects from her medication. Moreover, Plaintiff testified that Naproxen is the only medication she is currently taking.[3] Therefore, the ALJ adequately inquired into different medications Plaintiff was taking, as well as potential side-effects from that medication.

Second, the ALJ did inquire into Plaintiff's daily level of pain. Specifically, the ALJ asked Plaintiff, "So, what's the left one like now that it's had three surgeries?" and "Is there much pain in your foot?" (Tr. 226). In addition to this direct inquiry, the ALJ also made an extensive inquiry into the extent of Plaintiff's ability to perform daily activities, such as her ability to dress herself, cook, vacuum, visit other people, and shop for essentials. (Tr. 230-32). Furthermore, after directly questioning Plaintiff, the ALJ asked her if she had any other issue that she had not yet discussed at the hearing. (Tr. 230). Therefore, the ALJ adequately developed the record in regard to Plaintiff's daily level of pain.

Third, while it is true that the ALJ noted Plaintiff had three surgeries on her feet when in-fact she had five, two of those surgeries occurred well before 2003, the date when Plaintiff alleged the onset of disability. Thus, the ALJ's omission of the two earlier surgeries could have been either an oversight in the drafting of the written opinion or an indication the ALJ did not find them relevant to the current issues. In either case, this issue is not dispositive because whether Plaintiff had three or five foot surgeries has no practical effect on the outcome this case. *See Moore v. Astrue*, 2008 WL 216605 *5 (D.S.C.) (stating administrative findings should not be set aside based on an arguably

---

[3] Plaintiff's testimony regarding the medication she is currently taken was in response to the ALJ's inquiry about what medication she was currently taking for pain.

deficiency in opinion-writing technique when it had no practical effect on the outcome of the case). For these reasons, the court finds the that the record is properly developed and the ALJ appropriately discharged his fact-finding duty to Plaintiff as a pro se claimant.

B.      The ALJ's Explanation of Plaintiff's Residual Functional Capacity

The Commissioner also contends that the Magistrate Judge erred in determining that the ALJ did not explain his findings regarding the RFC as required by Social Security Rule 96-8p. The court agrees.

The Magistrate Judge found the ALJ failed to thoroughly discuss the evidence or the basis for Plaintiff's RFC determination. The Magistrate Judge correctly noted that Social Security Ruling 96-8p requires that the RFC assessments "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." (Report & Recommendation, at 22). Ruling 96-8p also states that:

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

SSR 96-8p; SSR 96-2p; *See also* 20 CFR § 404.1527(d)(2)(2007).[4]

---

[4] Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in

In the present case, the ALJ stated that all symptoms were considered to the extent that they reasonably could be accepted as consistent with the objective medical evidence. (Tr. 18). Moreover, the ALJ concluded the medical evidence in this case did establish the existence of a medically determinable impairment capable of producing some of Plaintiff's foot and back symptoms. The ALJ went on to note that Plaintiff attends church, visits her mother regularly, and on some days assists her disabled husband getting dressed. (Tr. 19). More importantly, the ALJ noted that "great weight" was accorded to the opinion of Plaintiff's treating physician, Dr. Walker, who indicated in his March 29, 2006, letter that Plaintiff was unable to bear weight in excess of thirty minutes on her left foot or walk more than one city block without pain. (Tr. 18). Dr. Walker wrote this letter nine days after he reevaluated Plaintiff. At that time, the record reflects that he had been acting as Plaintiff's treating physician for nearly three years. During this three year period, Dr. Walker saw Plaintiff almost monthly and performed numerous tests and examinations on her. When a treating physician has a long treatment history with a claimant and has performed numerous tests and exams on a claimant, it is appropriate to place substantial weight on that physician's opinion. *See* 20 CFR §§ 404.1527(d)(2)(i-ii) (2007). Therefore, the court finds the ALJ adequately explained his findings regarding Plaintiff's residual functional capacity.

C.     The ALJ's Consideration in Determining Plaintiff's Residual Functional Capacity

The Commissioner next contends that the Magistrate Judge erred in finding that the ALJ failed to consider all Plaintiff's impairments in determining her RFC. This court agrees.

The Magistrate Judge determined that the ALJ did not place appropriate weight on Plaintiff's

---

paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion. 20 CFR § 404.1527(d)(2)(2007).

back and hip issues in making his RFC decision because: (1) the ALJ did not find the Plaintiff credible; and (2) there was "no orthopedic involvement, and no imaging studies showing abnormality related to the claimant's back and hip complaints." (Report & Recommendation, at 25).

The Magistrate Judge determined that the ALJ erred in determining Plaintiff's RFC because he failed to take Plaintiff's hip and back pain into account when making the RFC determination. An impairment is severe if it significantly limits an individual's ability to do basic work activities. Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. *See* 20 C.F.R. § 404.1521(b) (2007). It is well- established that claimants bear the burden of proving the severity of their impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Medical information is the major proof component in any Social Security disability case, and it is the ALJ's responsibility to weigh the medical evidence, in order to resolve any conflicts which might appear. *McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). While he may not reject medical evidence for no reason or for the wrong reason, under the regulations he may assign little or no weight to a medical opinion, even from the treating physician, based on the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d), if he explains his rationale sufficiently and if the record supports his findings. *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). In the end, if the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence then the Commissioner's final decision must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In this case, Plaintiff was seeing a chiropractor for her back and hip problems, and was diagnosed with a subjugation of the lumbar spine. The record further reflects that Plaintiff had some hip displacement, and that both of these conditions caused her pain. Plaintiff was referred to the chiropractor, Dr. Kyles, by Dr. Walker and began chiropractic therapy on September 13, 2005.

However, the record does not indicate that Dr. Kyles or Blackville Medical Center placed any functional limitations on Plaintiff. In fact, the only functional limitations imposed by a doctor were from Dr. Walker in the March 29, 2006, letter that stated Plaintiff was unable to put weight on her left foot for more than thirty minutes or walk more than one city block without pain. Given that the record reflects Plaintiff continued to see Dr. Walker during the entire course of her chiropractic treatment and that he was aware of her back and hip conditions, there is no reason to conclude that his assessment of Plaintiff's functional limitations were inaccurate or incomplete. Pursuant to the Regulations, it was completely appropriate for the ALJ to give weight to Dr. Walker's opinion, especially considering the fact that he was her doctor for thirty-five months prior to writing the letter, the fact that he saw her as a patient almost every month over that time, and the fact that he had provided her with extensive pain management treatments during that time.[5] *See* 20 C.F.R. § 404.1527(d)(2)(i) (2007) (citing "[l]ength of the treatment relationship and the frequency of examinations" as a factor in decision to give weight to opinions from treating physicians).

After considering all the evidence, the ALJ rejected the Vocational Expert's assessment of Plaintiff's physical limitations and adopted Dr. Walker's assessment of Plaintiff's limitations. The limitations described by Dr. Walker and adopted by the ALJ are completely consistent with Plaintiff having a residual functional capacity that allows her to perform sedentary work, and thus are supported by substantial evidence. It is not within the province of a reviewing court to determine the weight of the evidence or substitute its judgment for that of the ALJ if his decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Therefore, the court

---

[5] In addition to Dr. Walkers letter, the ALJ also noted that he considered Plaintiff's aforementioned testimony regarding her daily activities.

finds the ALJ properly considered all Plaintiff impairments in determining her residual functional capacity.

## VI.  CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and the Commissioner's objections, this court declines to adopt the Magistrate Judge's Report and Recommendation.  For the reasons set out hereinabove, the Commissioner's final decision to deny benefits is **affirmed**.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 30, 2008